## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ASHLEY WILCOX PAGE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:16-CV-01993-KOB** |
| | ] | |
| **TODD L. HICKS, NNA, CRNA; et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Ashley Wilcox Page, a former student in the University of Alabama at Birmingham's ("UAB") School of Nursing Anesthesia Program, filed suit against Todd Hicks, Susan McMullan, Peter Tofani, and the Board of Trustees of the University of Alabama, alleging that they wrongfully dismissed her from the Program. (Doc. 25). In Counts 1 and 2, Ms. Page raises due process claims against the Board of Trustees and all three individual defendants in their official and individual capacities; in Count 3, Ms. Page asserts a negligence claim against Mr. Hicks and Ms. McMullan in their official and individual capacities; in Count 4, Ms. Page presents a negligence claim against Ms. McMullan in her official and individual capacities; and in Count 5, Ms. Page pleads a negligence claim against Mr. Tofani in his official and individual capacities. (*Id.*). In the federal due process claims, she seeks monetary damages and injunctive relief, and in the state law negligence claims, she seeks only monetary damages.

Defendants move to dismiss the amended complaint, asserting that they are entitled to Eleventh Amendment immunity, sovereign immunity, state agent immunity, and qualified immunity, and in the alternative, that the amended complaint fails to state a federal claim. (Doc.

26).  The court WILL GRANT Defendants' motion to dismiss and WILL DISMISS the amended complaint.

The court finds that the Board of Trustees is entitled to Eleventh Amendment immunity, so the court WILL DISMISS WITHOUT PREJUDICE the Board of Trustees as a defendant.

The court finds that the individual defendants in their *official* capacities are entitled to Eleventh Amendment immunity from the federal claims seeking monetary damages, but that under the *Ex parte Young* doctrine, they are not entitled to Eleventh Amendment immunity from the federal claims seeking injunctive relief.  Although the court finds that the individual defendants are not entitled to Eleventh Amendment immunity from the federal claims seeking injunctive relief, the court finds that Ms. Page fails to state a procedural or substantive due process claim.  As a result, the court WILL DISMISS WITHOUT PREJUDICE the federal claims raised against the individual defendants in their official capacities seeking monetary damages, and WILL DISMISS WITH PREJUDICE the federal claims raised against the individual defendants in their official capacities seeking injunctive relief.

The court also finds that the individual defendants are entitled to qualified immunity from the federal claims seeking monetary damages from them in their individual capacities because Ms. Page's allegations fails to establish a constitutional violation.  The court WILL DISMISS WITH PREJUDICE the federal claims raised against the individual defendants in their individual capacities.

Finally, in light of the court's dismissal of all of the federal claims, the court declines to exercise supplemental jurisdiction over the state law claims.  The court WILL DISMISS WITHOUT PREJUDICE Counts 3, 4, and 5 for lack of jurisdiction.

# I.  BACKGROUND

At the motion to dismiss stage, the court must accept as true the allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012); *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008).  Taken in that light, in August 2014, Ms. Page enrolled as a student at the UAB's School of Nursing Anesthesia Program.  (Doc. 25 at 3).  In August 2016, she began a clinical rotation at Baptist South Hospital in Montgomery, Alabama.  (*Id.*).

Apparently, between August 18 and August 25, 2016, during Ms. Page's clinical rotation, three evaluators filled out negative evaluations about her performance.  (*Id.* at 3, 9).  Ms. Page contends that one of the evaluations was not actually about her, but about a different nursing student.  (*Id.* at 5, 10).  Assistant Professor Todd Hicks received the three negative clinical evaluations about Ms. Page and he sent them to the Director of the Nurse Anesthesia Program, Susan McMullan.  (*See id.* at 4–5, 9).  On August 28, 2016, Ms. McMullan emailed Ms. Page instructing her to attend a meeting with several UAB employees, including herself and the Assistant Dean for Student Affairs, Peter Tofani.  (*See id.* at 6).

The meeting took place on August 29, 2016.  (*Id.* at 5).  At the meeting, Ms. McMullan gave Ms. Page the three evaluations, told her that she "would not be allowed to continue in the Program as an unsafe nurse," and informed her that she "was dismissed from the UAB School of Nursing Anesthesia program effective immediately."  (*Id.* at 5–6).  According to Ms. Page, Ms. McMullan made the "unilateral decision" to dismiss her.  (*Id.* at 12).  Mr. Tofani gave Ms. Page a business card and asked her to call him when she was ready to learn about her options to appeal the dismissal.  (*Id.* at 5–6).

In September 2016, Ms. Page attended a meeting with Mr. Tofani and another UAB employee. (*Id.* at 7). At that meeting, Mr. Tofani told Ms. Page that she had been dismissed from the program for safety reasons, but also stated that she was still a student, she had received a failing grade, and she would be dismissed at the end of the semester. (*Id.* at 7–8). He told her that she would not be reinstated. (*Id.*).

For several months after the August meeting, Ms. Page continued to correspond and meet with UAB administrators about her dismissal. (*Id.* at 8–13). Different administrators told Ms. Page that she had or had not yet been dismissed from school, and that she could follow the academic misconduct grievance procedure or the student academic complaint process described in the School of Nursing Handbook. (*Id.* at 8–10). On December 7, 2016, the School convened a grievance hearing panel to consider Ms. Page's challenge to her dismissal. (*Id.* at 12). Ms. Page's attorney was present, but not allowed to speak; most of the witnesses that Ms. Page requested did not attend; and Ms. Page was not allowed to present testimony from those missing witnesses. (*Id.* at 12–13). On December 19, 2016, the Dean of the School of Nursing sent Ms. Page a letter stating that she was "dismissed from the Nurse Anesthesia specialty track of the MSN program." (*Id.* at 13–14).

Ms. Page filed suit against Mr. Hicks, Ms. McMullan, Mr. Tofani, and the Board of Trustees of the University of Alabama,[1] asserting the following federal counts: (1) Defendants deprived her of due process, in violation of the Fourteenth Amendment to the U.S. Constitution, by dismissing her without following School of Nursing's requirements for dismissing a student ("Count 1"); and (2) Defendants deprived her of due process, in violation of 42 U.S.C. § 1983,

---

[1] Ms. Page's initial complaint incorrectly named as a defendant the University of Alabama at Birmingham, but after the case was removed to federal court, the court substituted the Board of Trustees of the University of Alabama as the correct defendant. (*See* Doc. 17).

by dismissing her intentionally, willfully, negligently, maliciously, with deliberate indifference, and/or with a reckless disregard for the natural and probable consequences of their act ("Count 2"). (Doc. 25 at 14–17). For those counts, she seeks monetary damages and injunctive relief in the form of reinstatement as a student. (*Id.*).

Ms. Page also asserts the following state law negligence claims against the individual defendants: (1) negligence by Mr. Hicks and Ms. McMullan for using a different student's clinical evaluation as grounds to dismiss Ms. Page from the school ("Count 3"); (2) negligence by Ms. McMullan for failing to follow the School of Nursing's procedures for dismissing a student ("Count 4"); and (3) negligence by Mr. Tofani for failing to follow the School of Nursing's procedures for dismissing a student ("Count 5"). (*Id.* at 14–20). For those counts, she seeks only monetary damages.[2] (*Id.* at 20–21).

Ms. Page initially filed suit in state court. (Doc. 1-1). Defendants removed the case to federal court, (doc. 1), and then moved to dismiss the amended complaint for lack of jurisdiction and failure to state a claim, (doc. 26).

## II.   DISCUSSION

Defendants move to dismiss the amended complaint on various immunity grounds under Federal Rule of Civil Procedure 12(b)(1). (Doc. 26 at 7–20, 26–30). In the alternative, they move, under Rule 12(b)(6), to dismiss Counts 1 and 2—the federal counts—for failure to state a claim. (*Id.* at 20–26).

---

[2] In her response to the motion to dismiss, Ms. Page states that she also seeks declaratory relief. (Doc. 28 at 22). The amended complaint, however, does *not* request declaratory relief in those counts. (*See* Doc. 25 at 20–21). Ms. Page may not amend her complaint via briefing on a motion to dismiss. *Cf. GeorgiaCarry.Org v. Georgia*, 687 F.3d 1244, 1258 n.26 (11th Cir. 2012) ("[A] plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings.").

Rule 12(b)(1) permits a district court to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Rule 12(b)(6) permits a district court to dismiss "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Before addressing the motion to dismiss, the court must clarify some preliminary matters about the amended complaint. First, the two federal counts, Counts 1 and 2, each refer vaguely to "due process" violations. (*See* Doc. 25 at 14–17). Such a vague assertion of "due process" violations does not state a recognizable cause of action. However, because Ms. Page seeks both monetary damages and equitable relief in the form of reinstatement, the court construes her amended complaint in the light most favorable to her, and assumes that she raises both procedural and substantive due process claims. *See McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc) ("In substantive due process cases, the claimant seeks compensatory damages for the value of the deprived right. In procedural due process cases, however, although the claimant may seek compensatory damages, the primary relief sought is equitable . . . .").

The court construes Count 1 to raise a procedural due process claim because the claim is based on Defendants' alleged failure to give Ms. Page proper notice and an opportunity to be heard before dismissing her from the Program. (*See id.* at 15). The court construes Count 2 to raise a substantive due process claim because the claim is based on Defendants' actions that Ms. Page alleges were intentional, willful, negligent, malicious, deliberately indifferent, and taken with "reckless disregard for the natural and probable consequences of their act." (*See id.* at 16).

In addition, Count 1 appears to be a freestanding due process claim, while Count 2 is a § 1983 process claim. (*Id.* at 14, 16). But "[w]here a statute provides an adequate remedy, [the court] will not imply a judicially created cause of action directly under the Constitution."

*GeorgiaCarry.Org v. Georgia*, 687 F.3d 1244, 1254 n.15 (11th Cir. 2012). Section 1983

provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws." 42 U.S.C. § 1983. As a result, the court "will not imply a judicially

created" freestanding due process claim, but will instead construe Count 1 as a § 1983 due

process claim. *See Anderson v. Edwards*, 505 F. Supp. 1043, 1045 (S.D. Ala. 1981) ("[N]o

claim exists under the first and fourteenth amendments to the United States Constitution because

no implied cause of action exists under those amendments. Instead, where rights granted by the

first or fourteenth amendments are violated a plaintiff must vindicate those rights through 42

U.S.C. s 1983.").

Finally, the amended complaint does not indicate whether the claims are against the

individual defendants in their official or individual capacities. (*See generally* Doc. 25 at 14–20).

Ms. Page states in her response to the motion to dismiss that she intended for each count to be

against the individual defendants in *both* capacities. (Doc. 28 at 21). "In many cases, the

complaint will not clearly specify whether officials are sued personally, in their official capacity,

or both. The course of proceedings in such cases typically will indicate the nature of the liability

sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (quotation marks

omitted). The amended complaint seeks monetary damages for all of the claims, and also seeks

injunctive relief in the form of reinstatement as a student for the federal claims. (Doc. 25 at 14–

21).

Assuming that no immunity bars any of the claims, Ms. Page could obtain the injunctive

relief she seeks from the individual defendants in their *official* capacities, but she could not

obtain the injunctive relief she seeks from the individual defendants in their *individual* capacities.

*See Ingle v. Adkins*, __ So. 3d __, 2017 WL 5185288, at *2 (Ala. 2017) ("[A] suit for injunctive

relief against a State official in his or her individual capacity would be meaningless. This is so, because State officials act for and represent the State *only in their official capacities.*") (quoting *Ex parte Dickson*, 46 So. 3d 468, 474 (Ala. 2010)) (emphasis in original). As a result, the court will not construe Counts 1 and 2—the only counts in which Ms. Page seeks injunctive relief—to assert claims for injunctive relief against the individual defendants in their individual capacities.

In summary, the court construes the amended complaint to raise the following claims against the following defendants:

- Counts 1 and 2 (§ 1983 procedural and substantive due process claims): seeking monetary damages and reinstatement from the Board of Trustees; seeking monetary damages and reinstatement from the individual defendants in their official capacities; and seeking only monetary damages from the individual defendants in their individual capacities
- Count 3 (negligence claim): seeking monetary damages from Mr. Hicks and Ms. McMullan in their official and individual capacities
- Count 4 (negligence claim): seeking monetary damages from Ms. McMullan in her official and individual capacities
- Count 5 (negligence claim): seeking monetary damages from Mr. Tofani in his official and individual capacities

A. Jurisdiction

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley*, 524 F.3d at 1232. In this case, Defendants make only a facial attack on the court's jurisdiction. "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction . . . ." *Id.* at 1232–33 (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quotation, citation, and alterations omitted)).

Defendants contend they are entitled to various forms of immunity from various combinations of the claims. As for Ms. Page's federal claims, all Defendants contend they are

entitled to Eleventh Amendment immunity, and the individual defendants contend they are entitled to qualified immunity from the claims brought against them in their individual capacities. (Doc. 26 at 7–19). As for Ms. Page's state law claims, the individual defendants contend they are entitled to state sovereign immunity from the claims against them in their official capacities, and state agent immunity from the claims against them in their individual capacities. (*Id.* at 26–30). But because the court concludes that it must dismiss the federal claims in part for lack of jurisdiction and in part for failure to state a claim, the court will not address Defendants' arguments about the various state law immunities.

### 1. Federal Claims

#### a. *Eleventh Amendment Immunity*

"The Eleventh Amendment provides that the 'Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States' by citizens of another State, U.S. Const., Amdt. 11, and (as interpreted) by its own citizens." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). The amended complaint raises two federal due process claims against each defendant. (Doc. 25 at 14–17). Defendants contend that under the Eleventh Amendment, the court lacks jurisdiction over those counts. (Doc. 26 at 7–11). Ms. Page responds that Defendants waived their Eleventh Amendment immunity defense by removing the case to federal court. (Doc. 28 at 10–16). The court agrees that Defendants waived their Eleventh Amendment immunity from *suit* in this federal forum, but concludes that they did not waive their immunity from *liability*.

The Supreme Court has held that "the State's act of removing a lawsuit from state court to federal court waives [Eleventh Amendment] immunity." *Lapides*, 535 U.S. at 616. In *Lapides*, a plaintiff sued officials of the State of Georgia in state court. *Id.* Because the State

had statutorily waived sovereign immunity from state law suits in state court, it removed the case to federal court and argued that it was entitled to Eleventh Amendment immunity from suit. *Id.* The Supreme Court rejected that contention, in part because "[t]o adopt the State's Eleventh Amendment position would permit States to achieve unfair tactical advantages." *Id.* at 621.

The Court in *Lapides* limited its holding to situations in which the lawsuit does not raise a valid federal claim and the State has waived sovereign immunity from state law suits in state court. *Id.* at 616–18. But "[n]otwithstanding the express limitation on its holding, the Court's . . . reasoning was in many ways quite broad." *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Florida*, 692 F.3d 1200, 1205 (11th Cir. 2012). "[U]nder *Lapides*' reasoning, a state waives its immunity *from a federal forum* when it removes a case, which voluntarily invokes the jurisdiction of that federal forum." *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013) (emphasis added). Under *Lapides* and *Stroud*, Defendants waived any objection to this federal forum by removing the case from state court.

But the waiver of Eleventh Amendment forum immunity does not end the inquiry, because "nothing in *Lapides* suggests that a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims. *Lapides* specifies that it is addressing only immunity to a federal forum." *Stroud*, 722 F.3d at 1302; *see also Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."). In other words, this court must determine whether some other form of immunity would bar Ms. Page's amended complaint if the case had never been removed—if a state court, instead of a federal court, were deciding the motion to dismiss on immunity grounds.

Under Alabama law, Article I, § 14 of the Alabama Constitution protects the State from liability for state law claims brought against it, and the Eleventh Amendment to the United States Constitution protects the State from liability for federal claims brought against it. *See Ala. State Univ. v. Danley*, 212 So. 3d 112, 124 (Ala. 2016) ("[Section] 14 provides absolute immunity from suit—and thus liability—for monetary damages based on state-law claims . . . ."); *id.* at 133 ("[Section] 14 provides [the Alabama State University and individual members of its Board of Trustees] no immunity from Danley's federal-law claims. Rather, for [those defendants], immunity for liability as to Danley's federal-law claims derives from the Eleventh Amendment to the United States Constitution.") (citations omitted).

As discussed above, Defendants' invocation of this federal forum waives Eleventh Amendment forum immunity, but it does not necessarily waive Defendants' immunity from liability. *See Stroud*, 722 F.3d at 1301 ("The Supreme Court has repeatedly recognized that sovereign immunity is a flexible defense with multiple aspects that states can independently relinquish without affecting others."); *id.* ("[A] state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts."). In this case, the State asserts the same defense it could have asserted in state court. *See, e.g.*, *Danley*, 212 So. 3d at 133 (indicating that Eleventh Amendment immunity is an available defense to liability in Alabama state court). As a result, the court must determine whether the Board of Trustees and the individual defendants in their official capacities are entitled to Eleventh Amendment immunity from liability on the two federal claims against them.[3]

---

[3] The individual defendants in their *individual* capacities are not entitled to Eleventh Amendment immunity because, if Ms. Page prevails against them, they, not the State, would be liable. *See Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993) ("The Eleventh Amendment protects no personal assets in 'individual' or 'personal' capacity suits in federal court."); *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1577 (11th Cir. 1994) ("The essence of an individual capacity suit is that the plaintiff is seeking to recover from the individual defendant who is

The first question the court faces is whether the Board of Trustees and the individual defendants in their official capacities are considered the State for purposes of Eleventh Amendment immunity. The court finds that they are. "The Eleventh Circuit has determined that state universities in Alabama, as arms of the state, are entitled to Eleventh Amendment immunity." *Harris v. Bd. of Trs. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012) (citing *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985)). And "agents and instrumentalities of the State" are also arms of the State. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc); *see also Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995) ("Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent.").

The next question is whether an exception to Eleventh Amendment immunity prevents the State's invocation of immunity. Three exceptions to Eleventh Amendment immunity exist. First, Congress may abrogate a State's immunity. *Cross*, 49 F.3d at 1502. Second, the State may consent to be sued or waive its immunity. *Id.* And third, under the *Ex parte Young* doctrine, "official-capacity suits against state officials are permissible . . . when the plaintiff seeks '*prospective* equitable relief to end *continuing* violations of federal law." *Lane v. Central Ala. Comm. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (citation altered) (emphases in original) (quoting *Summit Med. Assocs. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999)); *see also Ex parte Young*, 209 U.S. 123 (1908).

---

personally liable for the judgment."). That conclusion stands even if the State of Alabama provides insurance coverage for judgments against state officials sued in their individual capacities. *See Jackson*, 16 F.3d at 1578 ("We conclude that the existence of a voluntarily established liability trust fund does not make the state the real party in interest in this action and that the trust fund does not extend the state's Eleventh Amendment immunity to its employees sued in their individual capacity.") (footnote omitted).

"Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases,"

*Quern v. Jordan*, 440 U.S. 332, 338 (1979), and the State of Alabama has not waived its

immunity to liability. *See* Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a

defendant in any court of law or equity."). Thus, neither of the first two exceptions applies.

Those are the only exceptions that permit claims for monetary damages, so the Eleventh

Amendment bars Ms. Page's federal claims for monetary damages from the State, *i.e.*, from the

Board of Trustees and the individual defendants in their official capacities.

But Ms. Page also seeks injunctive relief from both the Board of Trustees and the

individual defendants in their official capacities, in the form of reinstatement as a student at

UAB. (*See* Doc. 25 at 14–17). The *Ex parte Young* doctrine permits lawsuits against state

officials "when the plaintiff seeks *prospective* equitable relief to end *continuing* violations of

federal law." *Lane*, 772 F.3d at 1351 (quotation marks omitted) (emphases in original).

Ms. Page's request for injunctive relief from the Board of Trustees—an arm of the

State—must fail because the *Ex parte Young* exception "has no application in suits against the

States and their agencies, which are barred regardless of the relief sought." *Puerto Rico

Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). But her request for

injunctive relief from the individual defendants in their official capacities falls within the *Ex

parte Young* exception.[4] The Eleventh Circuit has held that "requests for reinstatement

constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception

and, thus, are not barred by the Eleventh Amendment." *Lane*, 772 F.3d at 1351.

---

[4] In their first motion to dismiss, Defendants argued that the individual defendants lack
the authority to grant the injunctive relief Ms. Page seeks. (Doc. 14 at 6 n.3). The court granted
that motion on other grounds. (Doc. 20). Defendants do not repeat the lack-of-authority
argument in their current motion to dismiss, so the court does not address it.

In summary, the Eleventh Amendment bars Counts 1 and 2—the federal claims—against the Board of Trustees. Because Ms. Page raises no other claims against the Board of Trustees, the court WILL DISMISS WITHOUT PREJUDICE the Board of Trustees for lack of jurisdiction.

The Eleventh Amendment also bars Counts 1 and 2 against the individual defendants to the extent that those counts seek monetary damages from them in their official capacities. The court WILL DISMISS WITHOUT PREJUDICE Counts 1 and 2 against the individual defendants in their official capacities to the extent those counts seek monetary damages.

But under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar Ms. Page's requests for injunctive relief from the individual defendants in their official capacities. Defendants contend, in the alternative, that Counts 1 and 2 fail to state a claim. The court will address that argument in the next section, which also addresses whether the individual defendants are entitled to qualified immunity from the federal claims brought against them in their individual capacities for monetary damages.

### b. Qualified Immunity

The individual defendants in their individual capacities contend that they are entitled to qualified immunity as to Counts 1 and 2—the federal claims—insofar as those counts seek monetary damages. (Doc. 26 at 11–19).

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear

of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law . . . ." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and quotation marks omitted). The court must "compare the acts of each defendant to analogous case law to determine whether *each defendant* has violated a clearly established constitutional right." *Corey Airport Servs. v. Decosta*, 587 F.3d 1280, 1288 n.6 (11th Cir. 2009).

To prove that a public official is entitled to qualified immunity, the official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Penley ex rel. Estate of Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010) (quoting *Lee*, 284 F.3d at 1194). Accepting as true the facts alleged in Ms. Page's amended complaint, it appears the individual defendants were acting in the scope of their discretionary authority when they took the allegedly wrongful acts because their "actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quotation marks omitted).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (quoting *Lee*, 284 F.3d at 1194). The question whether qualified immunity is appropriate is, itself, a two part test that the court may address in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). One part of the test is "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (quotation marks and citation omitted). The second part is whether the constitutional violation was clearly established at the time of the alleged wrongful conduct. *Pearson,* 555 U.S. at 816. The public official is

entitled to qualified immunity unless the plaintiff establishes both parts of the test; failure to establish *either* prong dooms the plaintiff's case.

"A government official's conduct violates clearly established law when, at the time of the alleged conduct, the contours of the right are sufficiently clear that every 'reasonable official would have understood that what he is doing violates that right.'" *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The court "look[s] only to binding precedent—holdings of cases drawn from the United States Supreme Court, [the Eleventh Circuit], or the highest court of the state where the [conduct] took place." *Id.* (last alteration in original) (quotation marks omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

### i. Count 1: Procedural Due Process

Count 1 asserts that the individual defendants in their individual capacities violated Ms. Page's procedural due process rights by dismissing her without following the School of Nursing's procedures for dismissing a student. (Doc. 25 at 14–15).

"[A] § 1983 claim alleging the denial of procedural due process requires proof of three elements: (1) a deprivation of constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1148–49 (11th Cir. 2009) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

Because the court must address each individual defendant separately, the court will describe the alleged actions of each defendant. *See Corey Airport Servs.*, 587 F.3d at 1288 n.6. According to Ms. Page's amended complaint:

- **Mr. Hicks** sent the three negative clinical evaluations, including one that was about another nursing student, to Ms. McMullan. (Doc. 25 at 5).

- **Ms. McMullan** made a unilateral decision to dismiss Ms. Page based on the three negative evaluations. (Doc. 25 at 12). On August 28, 2016, she called a meeting to be held on August 29, 2016, with Ms. Page, Mr. Tofani, and several other unidentified people. (*Id.* at 5–6). At the meeting, Ms. McMullan informed Ms. Page that she would be receiving an F in her clinical course and was dismissed from the Program "effective immediately." (*Id.* at 5–6). Ms. McMullan did not provide Ms. Page with any pre- or post-meeting written notice of the people who would be present at the meeting, the proposed dismissal, the reasons for the proposed dismissal, or the negative evaluations. (*Id.* at 5).

  On October 5, 2016, about five weeks after the August meeting, Ms. McMullan wrote a memorandum outlining the three negative evaluations. (*Id.* at 9). Ms. McMullan gave that memorandum to the Senior Associate Dean for Academic Affairs, but not to Ms. Page. (*Id.*). The Senior Associate Dean eventually sent Ms. McMullan's memorandum to Ms. Page. (*Id.*).

- **Mr. Tofani** was present at the August 29, 2016 meeting during which Ms. Page was informed of her dismissal from the Program. (Doc. 25 at 5–6). After Ms. McMullan informed Ms. Page of her dismissal, he gave Ms. Page his business card and asked her to call him when she was ready to discuss her options to appeal the dismissal. (*Id.* at 6). Mr. Tofani did not provide Ms. Page with any pre- or post-meeting written notice of failing the clinical course or being dismissed from the Program. (*Id.*).

  On September 16, 2016, about two weeks after the August meeting, Ms. Page met again with Mr. Tofani and a non-party, Director of Student Affairs John Updegraff. (Doc. 25 at 7). At the meeting, Mr. Tofani represented both that Ms. Page had been dismissed from the Program and that she had not yet been dismissed, but that she would be dismissed at the end of the semester. (*Id.*). He also stated that she would not be reinstated. (*Id.*).

  On October 27, 2016, Mr. Tofani emailed Ms. Page a letter describing a "'written investigative report discussing allegations of misconduct' against Plaintiff Page" and explaining the appeals process. (Doc. 25 at 10). Ms. Page responded to his email by sending a letter telling him that the School and its personnel had refused to follow the procedural steps for addressing "academic misconduct." (*Id.* at 11). He sent that letter on to the Dean of the Nursing School, Dr. Doreen Harper. (*Id.* at 10–11).

Based on those allegations, Mr. Hicks is entitled to qualified immunity. Ms. Page alleges

*only* that he provided negative evaluations about her performance to Ms. McMullan. That

allegation does not constitute a "deprivation of constitutionally-protected liberty or property

interest." *Cook*, 573 F.3d at 1148–49. Professors and supervisors must be allowed to provide evaluations of students to school administrators. What the school administrators do with those evaluations is a different issue, and whether Ms. McMullan and Mr. Tofani are entitled to qualified immunity is a closer question.

Ms. Page does not assert that Mr. Tofani made the decision to dismiss her from the Program; she alleges only that Ms. McMullan made that "unilateral" decision. (Doc. 25 at 12). But she does allege that Ms. McMullan and Mr. Tofani were involved in the meeting during which they informed Ms. Page that she was being dismissed, and that they were involved in the post-dismissal actions taken by the School and other administrators. (*Id.* at 7–11). At the motion to dismiss stage, that is enough to allege that Mr. Tofani was involved in the purported deprivation. So the court must determine whether, taken as true, Ms. Page alleges facts showing that Ms. McMullan's and Mr. Tofani's actions: (1) deprived her of a constitutionally-protected liberty or property interest; (2) constituted state action; and (3) provided constitutionally inadequate process. *Cook*, 573 F.3d at 1148–49. The court concludes that, taken as true, the amended complaint asserts a deprivation of a constitutionally protected property interest, but it does not assert constitutionally inadequate process because the post-deprivation process cured any inadequate pre-deprivation process.

In *Barnes v. Zaccari*, the Eleventh Circuit held that when a State's official regulations create a "legitimate claim of entitlement to remain enrolled" at a state university, the student has a constitutionally protected property interest in that enrollment. 669 F.3d 1295, 1304 (11th Cir. 2012). In that case, the State's official regulations limited the university's authority to discipline students for misconduct unless disciplinary sanctions were "for cause." *Id.*

As in *Barnes*, in this case, Ms. Page alleges that the School of Nursing Student Handbook requires the School and its personnel to follow certain procedures before taking action against a student for academic misconduct. (Doc. 25 at 12). And as in *Barnes*, it appears that the Student Handbook creates a "legitimate claim of entitlement to remain enrolled" until the decision-makers follow those procedures. *Barnes*, 669 F.3d at 1304. Thus, at this stage, it appears that Ms. Page's amended complaint adequately alleges that she had a property interest in remaining enrolled at the School of Nursing until the School followed the procedures laid out in the Student Handbook.

Defendants do not contest that Ms. Page adequately alleged the second element of a procedural due process claim—state action. *See Cook*, 573 F.3d at 1148–49. So the court proceeds to the third element—constitutionally inadequate process. *Id.* A student dismissed from a public school for academic misconduct is entitled to less process than a student dismissed for disciplinary reasons. *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 (11th Cir. 1986). "Formal hearings are not required in academic dismissals. Rather, the Supreme Court held that the decision-making process need only be 'careful and deliberate.'" *Id.* (quoting *Bd. of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978)). The Supreme Court explained that academic dismissals require less process because "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural rules of judicial or administrative decisionmaking." *Horowitz*, 435 U.S. at 90.

Taking as true the allegations in Ms. Page's amended complaint, she arguably did not receive constitutionally adequate pre-dismissal process. The dismissal that Ms. Page describes was not "careful and deliberate," but rushed and, perhaps, confused. Mr. Hicks received some

negative evaluations, one of which was not about Ms. Page, between August 18 and August 24, and forwarded them to Ms. McMullan. (Doc. 25 at 4–5, 9). By August 28, Ms. McMullan and, apparently, Mr. Tofani, had decided to dismiss Ms. Page based on those evaluations, which they had not independently investigated or shown to Ms. Page. (*Id.* at 5–6, 12). And the court lacks any information about the content of the two evaluations that were about Ms. Page, so the court cannot determine whether the hasty nature of the pre-dismissal process was warranted. Taken in the light most favorable to Ms. Page, that is not "careful and deliberate."

Nevertheless, the court finds that Ms. Page fails to state a procedural due process claim. "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). "This rule . . . recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts—before being subjected to a claim alleging a procedural due process violation." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (quotation marks omitted).

Ms. Page alleges that, after her dismissal, she corresponded at length with different administrators, and the School eventually held a hearing at which she was permitted to present evidence and argument. (Doc. 25 at 12–13). She takes issue with the adequacy of that hearing, but, because this was an academic dismissal, she was not entitled to any hearing at all, as long as the process afforded her was "careful and deliberate." *Horowitz*, 435 U.S. at 90; *Haberle*, 803 F.2d at 1539. And nothing in the amended complaint indicates that the panel hearing was anything other than "careful and deliberate."

Ms. Page does not assert that Ms. McMullan or Mr. Tofani interfered with the panel hearing or the witnesses that she would have liked to call, or that the panel members made their decision based on anything other than records of her academic performance, including the two negative evaluations that were indisputably about her. To the extent she contends that the hearing was inadequate because the School failed to follow its own rules for the appeals process, the Supreme Court has rejected the assertion that, in an academic dismissal case, a school's failure to follow its own rules may amount to a procedural due process violation. *See Horowitz*, 435 U.S. at 92 n.8 ("[Plaintiff] also contends that [defendants] failed to follow their own rules respecting evaluation of medical students and that this failure amounted to a constitutional violation . . . . We disagree with . . . [the plaintiff]'s . . . legal contention[ ] . . . . [The cases on which the plaintiff] relied[ ] enunciate principles of federal administrative law rather than of constitutional law binding upon the States.") (citation altered); *Rollins v. Bd. of Trustees of the Univ. of Ala.*, 647 F. App'x 924, 938 (11th Cir. 2016) (unpublished) (stating that the plaintiff received "significantly more process than the Constitution requires," because "[e]ven though the Supreme Court has held that a formal hearing is not necessary for academic decisions, the university held a formal hearing during which [Plaintiff] testified on his own behalf, called witnesses, and was allowed to have an adviser present"). Although the process was not perfect, it was constitutionally adequate.

Even if Ms. Page's allegations stated a claim for a violation of procedural due process, the court finds that such a right was not clearly established in 2016, when Ms. Page was dismissed from the Program. Ms. Page has not pointed to any cases holding or placing beyond debate that Ms. McMullan's and Mr. Tofani's conduct in this case violated her procedural due process right. *See Ashcroft*, 563 U.S. at 741. The cases on which Ms. Page relies are

*disciplinary* misconduct cases, which use a different standard from academic dismissals. (*See* Doc. 28 at 17–19); *Goss v. Lopez*, 419 U.S. 565, 569 (1975) (addressing dismissals for "disruptive or disobedient conduct"); *Barnes*, 669 F.3d at 1298 (dismissing a student because the president of the university concluded that he presented a "clear and present danger"); *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 151 (5th Cir. 1961) (discussing whether students at a public university can be "expelled for misconduct" without notice and an opportunity for a hearing).

Nor has this court's independent research located any cases clearly establishing that Ms. McMullan's and Mr. Tofani's conduct in this case violated Ms. Page's procedural due process right. The Supreme Court's *Horowitz* decision requires only that the decision to dismiss a student be "careful and deliberate"; it does not say what constitutes "careful and deliberate" decisionmaking, except to reject the requirement that it include a hearing. *Horowitz*, 435 U.S. at 85, 90. And the Eleventh Circuit's *Haberle* decision echoed the holding that no hearing is required where the student "was given substantial opportunity to complain to all relevant decision-makers." 803 F.2d at 1539.

Ms. Page was able to complain about her dismissal and the School responded, even if it was after the fact. She was permitted to appear at a hearing to defend her academic progress and contest the negative evaluation that was about a different student. The court has already concluded that Ms. Page failed to state a procedural due process claim based on these facts, but even if she did state a claim, the facts alleged in this case, at best, implicate an open question about the level of process due a student dismissed for academic reasons. And state officials are entitled to qualified immunity from claims raising open questions; to avoid qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

The court WILL DISMISS WITH PREJUDICE Count 1 to the extent it seeks monetary damages from the individual defendants in their individual capacities, because they are entitled to qualified immunity. And because the court concludes that Count 1 fails to state a claim, the court also WILL DISMISS WITH PREJUDICE Count 1 to the extent it seeks injunctive relief from the individual defendants in their official capacities.

### ii. Count 2: Substantive Due Process

Count 2 asserts that the individual defendants in their individual capacities violated Ms. Page's substantive due process rights by dismissing her intentionally, willfully, maliciously, with deliberate indifference, and/or with a reckless disregard for the natural and probable consequences of their act. (Doc. 25 at 16–17).

In the academic dismissal context, the Supreme Court has described the standard for a substantive due process claim as follows:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (footnote omitted). The Eleventh Circuit has suggested, by negative implication, that "an improper motive" could be another basis for a substantive due process claim relating to a student's academic dismissal. *See Haberle*, 803 F.2d at 1540.

Ms. Page does not allege that any of the individual defendants had an improper motive for dismissing her; the assumption underlying her entire complaint is that they acted *negligently*, not with bad faith. Even though Ms. Page makes passing reference to the individual defendants

acting wantonly, that reference is conclusory and unsupported by factual allegations indicating a an improper motive. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context. . . . [they do] not empower [a plaintiff] to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

So that leaves the question whether the dismissal was "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225. Under the facts as alleged, Ms. Page has not stated a claim rising to that level. Even if the defendants negligently used an evaluation about a different student in their decision-making process, Ms. Page does not contest that the two other negative evaluations were about her, or claim that those two negative evaluations were false or wrong. The court will not interfere with a school's decision to dismiss a nursing student who has received two negative clinical evaluations; that decision rests within the decision-makers' professional judgment.

Because Ms. Page has not stated a substantive due process claim relating to her academic dismissal, the individual defendants are entitled to qualified immunity from that claim. The court WILL DISMISS WITH PREJUDICE Count 2, seeking monetary damages from the individual defendants in their individual capacities. And because the court concludes that Count 2 fails to state a claim, the court also WILL DISMISS WITH PREJUDICE Count 2 to the extent it seeks injunctive relief from the individual defendants in their official capacities.

### 2. State Law Negligence Claims

Because the court concludes that Counts 1 and 2, the only federal claims, must be dismissed, that leaves only the state law negligence claims asserted in Counts 3, 4, and 5. The

Supreme Court has noted that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Eleventh Circuit has also stated that "[t]he decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have *encouraged* district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (citations omitted) (emphasis added).

In light of the dismissal of all of Ms. Page's federal claims and the Eleventh Circuit's encouragement to dismiss state law claims when the federal claims have been dismissed before trial, the court declines to exercise supplemental jurisdiction over the state law claims. The court WILL DISMISS WITHOUT PREJUDICE the state law claims.

## III. CONCLUSION

The court finds that the Board of Trustees is entitled to Eleventh Amendment immunity as to all of the claims brought against it, regardless of the form of relief requested; the individual defendants in their official capacities are entitled to Eleventh Amendment immunity from Counts 1 and 2 as to the request for monetary damages, but not as to the request for injunctive relief; Counts 1 and 2 fail to state a claim; and the individual defendants in their individual capacities are entitled to qualified immunity as to Counts 1 and 2 because Ms. Page's allegations fail to establish that they violated her constitutional due process rights.

Consistent with those findings, the court WILL GRANT Defendants' motion to dismiss the amended complaint. The court WILL DISMISS WITHOUT PREJUDICE for lack of jurisdiction: (1) the Board of Trustees as a defendant; (2) Counts 1 and 2, to the extent they seek monetary damages from the individual defendants in their official capacities; and (3) Counts 3, 4,

and 5.  The court WILL DISMISS WITH PREJUDICE: (1) Counts 1 and 2, to the extent that they seek injunctive relief from the individual defendants in their official capacities, for failure to state a claim; and (2) Counts 1 and 2, to the extent they seek monetary damages from the individual defendants in their individual capacities, because those defendants are entitled to qualified immunity.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this 12th day of February, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE